UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TREVOR RUIZ | CIVIL ACTION |
| v. | NO. 19-1400 |
| TURN SERVICES, LLC | SECTION "L" (5) |
| | JUDGE ELDON F. FALLON |
| | MAGISTRATE MICHAEL B. NORTH |

**TURN SERVICES, LLC'S OPPOSITION TO DMA'S MOTION TO QUASH AND REQUEST FOR ATTORNEYS FEES AND COSTS**

NOW INTO COURT, through undersigned counsel, comes Defendant, Turn Services, LLC ("Turn Services"), which submits the following Opposition to Diagnostic Management Affiliates – Preferred Provider Organization LLC's ("DMA") Motion to Quash and for Request for Attorney's Fees and Costs (**R. Doc. 75**).

## I. BACKGROUND:

The principal lawsuit involves a claim asserted by Trevor Ruiz ("Plaintiff" or "Mr. Ruiz") against Turn Services under the Jones Act and general maritime law. Mr. Ruiz, an alleged seaman, seeks to recover, among other things, maintenance and cure benefits for alleged injuries.

Plaintiff filed a Motion for Partial Summary Judgment (**R. Doc. 59**) on the issues of maintenance and cure, which is currently pending before this Court and submitted for hearing on January 8, 2020 (the same day as DMA's Motion to Quash).

20548097_1

Specifically, Mr. Ruiz's Motion for Partial Summary Judgment concerns the maintenance, the reasonableness of certain cure benefits, and whether Turn Services has the right to investigate a seaman's demand for cure.

DMA is a litigation finance company that contracted with Plaintiff's counsel to allegedly pay certain expenses related to Mr. Ruiz's claim for cure. DMA has no direct contract with Mr. Ruiz for his alleged medical treatment expenses.

On July 24, 2019, Turn Services and DMA came before this Court on cross motions to compel and to quash, respectively, DMA's production of documents and notice of corporate deposition. *See*, (**R. Doc. 42**).

At the hearing, this Court ordered the parties to confer over the documents deemed discoverable and for DMA to produce those documents to Turn Services within fourteen (14) days of the hearing. *See*, (**R. Doc. 42**, p. 6, lines 16-18). This Court held that "DMA's documents that are related to Mr. Ruiz's care in this case, and any interactions they had with those providers for Mr. Ruiz, and any agreements around that care, including what was actually paid, are discoverable." (**R. Doc. 42**, p. 7, lines 6-9).

Additionally, this Court held that, in light of the forthcoming document production, Turn Services was to amend its deposition notice according to DMA's document production and re-submit same to DMA. (**R. Doc. 40** at p. 2; **R. Doc. 42**, p. 11, lines 10-14). This Court noted that should the parties have a disagreement over the areas of inquiry contained in the amended notice of deposition to DMA, this Court was willing to conduct a telephone conference with the parties. (**R. Doc. 40** at p. 2; **R. Doc. 42**, p. 11, lines 15-18).

Following the hearing, on August 2, 2019, DMA produced a limited number of documents responsive to Turn Services' subpoena *duces tecum* in accordance with this Court's order (**R. Doc. 40**); subsequent discussions between counsel for Turn Services and DMA followed.

On October 15, 2019, Plaintiff filed a Motion for Partial Summary Judgment demanding an increase in his maintenance rate and for certain cure benefits. *See*, (**R. Doc. 59**).

Upon reviewing DMA's limited production of documents and Plaintiff's Motion for Partial Summary Judgment, undersigned counsel for Turn Services contacted DMA's counsel on November 7, 2019 seeking dates of availability to take the corporate deposition of DMA given Plaintiff's pending Motion for Partial Summary Judgment. *See,* **Exhibit "A"** – Correspondences to DMA's Counsel, dated Nov. 7, 2019, at p. 5. DMA's counsel refused to provide dates of availability until counsel could review the *draft* amended Subpoena re-noticing the corporate deposition of DMA as ordered by this Court. *Id.* at p. 3-4; (**R. Doc. 40**, p. 2).

Thereafter, a conference call between respective counsels occurred and was productive; DMA's counsel provided undersigned counsel a date of his availability: December 17, 2019; all agreed that this date was purely the availability of all counsel. It was noted that should DMA be unavailable on this date, Turn Services was amenable to selecting another date. *See*, **Exhibit "A"** at p. 1.

On November 13, 2019, Turn Services submitted a *draft* of the amended Subpoena noticing the corporate deposition of DMA to DMA's counsel. *See*, **Exhibit "B"** –

3

Correspondence to DMA's Counsel re: Draft Amended Subpoena for the Corp. Depo. of DMA PPO, at p. 2. DMA did not object to the draft submitted or to any of the areas of inquiry listed within same. *Id.*

On November 18, 2019, undersigned counsel requested that DMA's counsel confirm that he would accept service of the amended Subpoena on DMA's behalf, which was agreed. *Id.* at 1.

On November 19, 2019, the formal Subpoena re-noticing DMA's corporate deposition was sent to DMA's counsel after having received no objections or calls concerning the draft sent on November 13, 2019. *See*, **Exhibit "C"** – Correspondence to DMA's counsel re: Amended Subpoena for the Corp. Depo. of DMA, p.1. The same areas of inquiry listed in the November 13th draft were not modified and mirror the final version. *See*, **Exhibit "D"** – Amended Subpoena for the Corp. Depo. of DMA.

On December 16, 2019, twenty-seven (27) days after receiving Turn Services' amended Subpoena and **the day before** the scheduled corporate deposition, DMA moved to quash Turn Services' amended Subpoena – even after Turn Services coordinated, revised, and amended its scope of inquiries to those which this Court held discoverable following the hearing on July 24, 2019. *See*, (**R. Docs. 40 and 42**).

DMA's Motion to Quash was Turn Services' first notice of DMA's objections to certain areas of inquiry, which is contrary to this Court's Order dated July 24, 2019. *See*, (**R. Doc. 40, at p. 2**). DMA did not confer with undersigned counsel for Turn Services concerning any of DMA's objections to any specific areas of inquiry prior to filing its Motion to Quash. In fact, on November 7, 2019, undersigned counsel advised DMA's

4

counsel that if DMA objected to certain areas listed in the amended Subpoena to please contact the undersigned to discuss same. *See,* **Exhibit "A"** – Correspondences to DMA's Counsel, dated Nov. 7, 2019, p. 2. More importantly, undersigned counsel noted in the same correspondence that should the parties be unable to resolve any <u>potential</u> dispute concerning the amended Subpoena that this Court was more than willing to confer with the parties via a telephone conference. *Id*; *see also,* (**R. Doc. 40** at p. 2) (wherein this Court ordered that it was to be advised of any remaining disagreements prior to any subsequent filings).

Turn Services' request to resolve any potential dispute without court intervention went unanswered and resulted in this surprise Motion to Quash.

Further, DMA's Motion to Quash fails to include a Rule 26 certification that it has attempted to confer or conferred with Turn Services regarding is objections to the amended notice of deposition. Therefore, given DMA's failure to confer and its disregard for this Court's Order dated July 24, 2019, Turn Services request that this Court deny DMA's Motion to Quash.

## II. LAW AND ARGUMENT:

### a. Turn Services is entitled to investigate the extent of Ruiz's claim for cure.

Rule 26 of the Fed. R. Civ. Proc. declares that a "party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim," including the amounts in controversy. The information need not be admissible into evidence for it to be discoverable. Fed. R. Civ. Proc. 26. Turn Services seeks information concerning Ruiz's

5

asserted claim for cure. DMA admits that it has discoverable information pertaining to Ruiz's claim for cure, but refuses to appear for a corporate deposition concerning the limited document production and narrowed areas of inquiry contained in the amended notice of deposition.

Cure is "defined as the **reasonable** costs of medical care until such time as the seaman reaches maximum medical improvement." *Lovell v. Master Braxton, LLC*, 2016 WL 6819043, * 5 (E.D. La 11/18/16) (**Fallon, J.**) (*citing*, *Pelotto v. L & N Towing Co.*, 604 F. 2d 396m (5th Cir. 1979)) (Emphasis Added). A shipowner's liability for cure "is to reimburse medical expenses *actually incurred by the plaintiff* and to ensure that the alleged seaman receives proper treatment and care." *Nelon v. Cenac Towing Co., LLC*, 2011 WL 289040, * 21 (E.D. La. 01/25/11) (**Fallon, J.**) (*citing*, *Boudreaux v. United States,* 280 F.3d 461, 468 (5th Cir. 2002)) (Emphasis Added); *see also*, *Morales v. Garijack, Inc.*, 829 F. 3d 1355, 1358 (5th Cir. 1987) (*abrogated on other grounds*) (*citing*, *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518–20 (5th Cir.1986)).

Turn is entitled to investigate an alleged seaman's claim for maintenance and cure benefits. *Verret v. Daigle Towing Serv's, LLC*, 2019 WL 77237, * 2 (E.D. La 01/02/19) (**Fallon, J.**) (*citing*, *Brown v. Parker Drilling Offshore Corp.*, 410 F. 3d 166, 171 (5th Cir. 2005)); *see also*, *Kendrick v. Maersk Line, Ltd.*, 2006 WL 2662996, * 4 (E.D. La 09/15/06) (**Fallon, J.**). "Upon receiving a claim for maintenance and cure, the shipowner need not immediately commence payments; he is entitled to investigate and require corroboration of the claim." *See*, *Morales*, 781 F. 2d at 1358; *see also*, *Kendrick*, 2006 WL 2662996, * 4 (**Fallon, J.**).

Turn Services is attempting to investigate the nature and extent of Mr. Ruiz's claim for cure through a corporate deposition of DMA, which is litigation finance company that has purposefully interjected itself into this lawsuit. DMA self-proclaims on its public website that its company is "specifically designed to help attorneys build stronger, more profitable cases." *See*, **Exhibit "E"** – DMA Website. The limited documents produced by DMA reveal that there is no contract between DMA and Mr. Ruiz. In fact, the documents produced reveal that the contractual agreement that DMA has is with Mr. Ruiz's counsel of record and not the Plaintiff himself. Therefore, Turn Services seeks to discovery how, if at all, Mr. Ruiz may be personally liable for cure costs asserted by DMA and his counsel.

Further, it appears that Mr. Ruiz may have executed an assignment or sale of a litigious right and certain benefits associated with a potential recovery in this litigation to DMA, which raises additional red-flags and warrants additional discovery. Importantly, based on the limited production of documents from DMA, it is clear that DMA has purposefully interjected itself into this matter and cannot now seek to avoid questions pertaining to same.

### b. Medical payment information is relevant to Mr. Ruiz's claims and Turn Services' defenses.

Contrary to DMA's assertions, Turn Services is entitled to utilize the Federal Rules of Civil Procedure to conduct its investigation into the claims asserted by Mr. Ruiz. Rule 26 declares, unequivocally, that a party has broad discovery authority so long as the information sought is relevant. The discovery sought need not be admissible, but must be

relevant. However, DMA now seeks to assert that it can unilaterally declare what is relevant and non-relevant discovery, which circumvents the rules of discovery.

DMA's public advertisements openly declare that its primary business is to increase the profitability of lawsuits for the benefit of lawyers. *See*, **Exhibit "E"** – DMA Website. DMA admits that it contracts with medical providers (both facilities and caregivers) for lower rates charged to the plaintiff, but bills third parties at standard (full) rates. Turn Services is only liable for those medical costs actually incurred by the Plaintiff Ruiz. *Nelon*, 2011 WL 289040, * 21 (**Fallon, J.**). In *Nelon*, this Court held that:

> If a seaman declines to see a private physician chosen by the employer and instead seeks the care of another private physician, the employer can reduce its cure obligations to the extent "that the cost of the plaintiff's treatment unnecessarily exceeded that which the employer would have incurred had the employee followed the employer's recommendation regarding a physician.

*Id.* (**Fallon, J.**) (*citing*, *Caulfield v. AC & D Marine, Inc.*, 633 F.2d 1129, 1134 (5th Cir.1981)) (internal quotations omitted).

However, it is clear from DMA's limited document production that there is no agreement between DMA and Mr. Ruiz. The only agreement in effect with DMA is its agreement with Mr. Hall's office, which was executed in 2013 – well before Mr. Ruiz's alleged incident.

The areas of inquiry included in the corporate deposition notice are relevant and directly permissible pursuant to the Federal Rules of Civil Procedure. The areas of inquiry are not arbitrary; the areas of inquiry were precisely amended per this Court's Order (**R. Doc. 40, p. 2**) to coincide with the documents produced by DMA and Mr.

Ruiz. Turn Services merely seeks to investigate the nature and extent of Mr. Ruiz's claim for cure benefits. After reviewing the limited document production from DMA, Turn Services specifically amended and curtailed its initial corporate deposition notice to mirror the topics specifically identified in DMA's own document production.

Specifically, Turn Services seeks to discover DMA's historical practices and use of its contracts existing between DMA and those specifically listed providers / subscribers to determine whether such contracts, among other things, are actually enforced or may be enforced against Mr. Ruiz, personally. To gain this knowledge, Turn Services requires testimony from those administering the contracts to testify as to the contract specifics and the alleged binding nature of the various agreements DMA readily admits exist and those certain documents already produced. Additionally, Turn Services seeks testimony on how Mr. Ruiz may be personally liable to DMA without any direct agreement in place.

Turn Services cannot discover from a limited production of documents how often DMA collects on alleged funds owed nor their policy on instituting collections on an individual plaintiff; the decision making process concerning the enforcement of alleged agreements is essential to determine what **Mr. Ruiz actually owes**. Therefore, testimony is necessary and proper to discern relevant information concerning any obligations Mr. Ruiz might owe given the limited production of documents from DMA that there is no agreement between DMA and Mr. Ruiz. The only agreement that DMA has produced − thus far − is between DMA and Mr. Ruiz's counsel; there is no evidence to suggest that Mr. Ruiz is personally liable to DMA for any of his medical costs should Mr. Ruiz not

9

20548097_1

prevail at trial. Therefore, Turn Services has the right to discovery what costs it may owe for cure given the documents produced.

### c. The collateral source doctrine is inapplicable to DMA's Motion to Quash and Mr. Ruiz's claims for cure.

DMA attempts to distract this Court by asserting the collateral source doctrine as a basis for its refusal to comply with Turn Services' valid subpoena. However, DMA cannot assert the collateral source doctrine as a valid basis for its non-compliance for two reasons: (1) discovery does not concern the admissibility or inadmissibility of information sought; and (2) the information is absolutely relevant and discoverable given Turn Services' right to investigate the reasonableness of Plaintiff's demand for cure benefits.

In *Lovell v. Master Braxton, LLC*, this Court unequivocally stated that "the collateral source doctrine is a tort-based doctrine and has **no place in a claim for maintenance and cure**, which is a no fault concept related to the contract of employment between a seaman and the vessel owner. *See*, *Gauthier v. Crosby Marine Service, Inc.*, 752 F.2d 1085, 1089-90 (5th Cir. 1985)." 2016 WL 6819043, * 5 (E.D. La 11/18/16) (**Fallon, J.**) (Emphasis Added). Turn Services has the right to investigate the reasonableness of Plaintiff's demand for cure benefits; specifically, Turn Services has the right to investigate charges that Plaintiff demands must be paid; however, it now appears that Plaintiff is not personally liable for certain charges demanded. Turn Services now seeks to determine how or if such third-party agreements between DMA and its subscribers are actually enforced (if at all) to determine whether Plaintiff Ruiz is actually

10

liable for any charges demanded, which is precisely the subject of Plaintiff's claims and Motion for Partial Summary Judgment.

Furthermore, the Louisiana Supreme Court recently held that like Longshore and Harbor Workers' Compensation Act claims, the collateral source rule "is tethered to payments ***actually*** **received by plaintiff**." *Simmons v. Cornerstone Investments, LLC*, 2018-0735, *6-7 (La. 05/08/2019); -- So. 3d --, 2019 WL 2041377, at *4 (Emphasis Added). The Louisiana Supreme Court adopted the U.S. Fifth Circuit's rationale in *Deperrodil v. Bozovic Marine, Inc.*, 842 F. 3d 352 (5th Cir. 2016) wherein Fifth Circuit held that "a plaintiff may not recover for expenses billed, but not paid." *Id.* Turn Services is only liable for reasonable costs paid by Mr. Ruiz. *Id*. Thus, even if the collateral source rule were controlling in this matter, which is denied because the proper standard is reasonableness of the costs paid by plaintiff, Turn Services would still be entitled to investigate the nature and extent of any cure payments asserted that were actually paid or incurred by Mr. Ruiz himself. *Id.*

Turn Services is entitled to depose any company that allegedly pays Mr. Ruiz's alleged medical expenses and that seeks recovery from Turn Services; it is entitled to determine the reasonable extent of the cost of cure. *Hall v. Noble Drilling (U.S.), Inc.*, 242 F. 3d 582, 588 (5th Cir. 2001). Turn Services is entitled to discover relevant documents that may support Mr. Ruiz's claims and those that might support its own defenses. DMA's collateral source argument fails to provide a valid basis for its non-compliance with the amended Subpoena and the majority of the cases DMA cites are

none are binding on this Court. Therefore, Turn Services request that this Court to deny this Motion to Quash and order the corporate deposition of DMA.

### d. A litigation finance company is not burdened by participating in a lawsuit it specifically contracted to participate in.

DMA's argument that its participation in this litigation is an undue burden is highly disingenuous given the nature of DMA's business. DMA publically advertises that the purpose of its business is to assist lawyers in making cases more profitable. *See*, **Exhibit "E"** – DMA Website. DMA purposefully asserted itself into this lawsuit for the sole purpose of profiting off a potential recovery in the disposition of this lawsuit. It now complains that it is a third-party that has no involvement in this matter.

DMA bears the burden to prove an undue burden in order to prevail on its Motion to Quash. The U.S. Fifth Circuit announced the factors to consider when evaluating such a claim, which are as follows:

> (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

To quickly go through the factors, the testimony requested directly relates to Mr. Ruiz's claims for cure and to Turn Services' defenses relating to same. Turn Services specifically identified certain healthcare providers / subscribers listed in DMA's limited document production, which are relevant to Plaintiff's claim for damages. Each provider / subscriber listed in the areas of inquiry concern Mr. Ruiz's treatment and claim for damages. Thus, DMA's own document production contradicts its Motion to Quash.

Rule 26 of the Federal Rules of Civil Procedure and binding case law provide that parties are entitled to investigate that nature and extent of cure claims asserted; this includes the cost of medicals **actually paid by plaintiff**. *Nelon*, 2011 WL 289040, * 21 (**Fallon, J.**). The scope of the inquiries provided in the amended Subpoena are precisely relating to Mr. Ruiz's claims and Turn Services' defenses.

Additionally, this Court ordered Turn Services to amend its notice of deposition following the limited document production; Turn Services amended the notice to mirror the healthcare providers / subscribers identified in DMA's limited production of documents. (**R. Doc. 40** at p. 2). DMA now complains as to the breadth of information sought, but Turn Services limited the areas of inquiry to those certain healthcare providers Mr. Ruiz sought or seeks treatment.

Turn Services' scope of discovery merely seeks to determine DMA's policies and procedures relating the satisfaction of payment for those specific providers / subscribers identified (in DMA's own documents) and to determine whether such arrangements directly benefit or costs are actually incurred by Mr. Ruiz. Often, testimony provided in the form of a deposition readily assists the parties to quick discovery responses, prevents an endless paper exchange, and is often more cost-effective and provides meaningful information to all parties.

Further, applicable time periods relevant to the claims asserted by Mr. Ruiz are identified in the respective areas of inquiry and all relate to Mr. Ruiz's treatment. Turn Services is entitled to discover relevant historical operations of DMA and its costs associated with DMA's payments made to the identified subscribers that allegedly benefit

Mr. Ruiz; Turn Services also seeks to determine the reasonableness of the satisfactory payments accepted by those same subscribers to determine if those same satisfactory payments were same costs billed to Turn Services.

Again, Turn Services drafted the particular areas of inquiry following its review of DMA's limited document production to inquire about relevant information to both Plaintiff's claims and Turns Services' defenses. Rule 26 of the Federal Rules of Civil Procedure entitles Turn Services to discover <u>all</u> relevant information that may assist it in its claims and defenses. It is DMA's burden to show good cause why the Turn Services should be prevented from obtaining relevant information.

No good cause has been shown.

Lastly, the burden placed on DMA is minimal at best. DMA purposefully asserted itself into this lawsuit with its subscriber, Jim Hall & Associates, L.L.C., to pay for medical benefits requested by the subscriber. Further, from DMA's limited document production, it appears that DMA may have been assigned a litigious right or share in judgment from this lawsuit should the Plaintiff prevail at trial; however, no document has ever been produced to declare that Mr. Ruiz is personally liable for costs paid by DMA, which begs the question as to whether Turn Services is liable for costs asserted by DMA for Mr. Ruiz's cure.

It is beyond plausible that DMA may be called to testify as to, among other things, the proof of payment of medicals, contracts for reimbursement, satisfactions of payments, enforceability of non-reimbursement and/or satisfaction of payments, enforceability of any assignment of interest, and any other agreement, practice or policy that may

14

influence or concern the claims or benefits associated with this lawsuit. DMA is a litigation finance company that specifically contracts to pay benefits for subscribers and allegedly received an assignment of interest in this lawsuit. DMA purposefully interjected itself into this lawsuit and Turn Services now seeks to depose DMA concerning certain areas of inquiry. Therefore, there is no undue burden placed on DMA to participate in a corporate deposition.

> **e. Each of which area of inquiry is specifically tailored to illicit information that may be admissible and assist Turn Services in its defense of Mr. Ruiz's claims.**

Turn Services responds, briefly, to each area of inquiry DMA so objects:

The first area of inquiry is precisely tailored to those providers listed or mentioned in DMA's own limited document production. Turn Services seeks testimony to determine the extent of those agreements' benefits to Mr. Ruiz and his claims for cure. Implementation and purpose of a contract cannot be discerned from the limited documents produced by DMA. Therefore, Turn Services seeks testimony concerning the first area of inquiry.

The second area of inquiry concerns the general business practices of the litigation finance company to determine how it administers claims asserted by its beneficiaries, subscribers, and, most importantly, Mr. Ruiz. Background information is necessary in almost every deposition to provide context. Without listing this area of inquiry, it may prevent DMA from being compelled to provide this necessary background information during the deposition. Further, DMA has produced documents which pre-date Mr. Ruiz's claim, and Turn Services should be entitled to determine the nature and extent of the

subscriber's agreement with Mr. Hall's office that was produced and it now seeks compensation through.

The third area of inquiry merely seeks to determine which persons at DMA specifically administer the benefits or claims relating to Mr. Ruiz; those persons may have additional relevant testimony concerning Mr. Ruiz's claim for cure. Most importantly, these persons may have testimony that will determine whether certain contractual provisions are routinely adhered to or whether variances in claims associated with Mr. Ruiz's alleged benefits are altered on a case-by-case basis or matter of course.

The fourth area of inquiry is the most relevant to the requested deposition: payment for and satisfaction for services rendered to Mr. Ruiz. Turn Services seeks testimony concerning the payment for cure benefits provided and the satisfaction for claims asserted for services rendered to Mr. Ruiz. DMA's only objection to this area of inquiry is that testimony provided relating to this area may be inadmissible, which is denied. However, despite DMA's attempt, DMA cannot avoid discovery so long as the testimony may be admissible, but need not be ultimately admissible. Further, DMA has absolutely no idea how a party might utilize corporate testimony at trial if at all.

The fifth area of inquiry simply seeks to determine the relationship between any identified provider / subscriber and DMA. Turn Services seeks to discover whether DMA has an ownership interest or other type of relationship with these providers / subscribers seeking payment. This evidence may reveal an additional layer of evidence to suggest that those providers / subscribers might have a direct interest in the amount billed and the outcome of this litigation.

16
20548097_1

The sixth area of inquiry is plain and simple: Turn Services seeks testimony concerning any fee arrangements relating to Mr. Ruiz, this lawsuit, and those certain providers / subscribers identified in DMA's production of documents relating to Mr. Ruiz's cure. What interest does DMA have in this litigation, if any? How would such interest be capitalized or asserted to influence the outcome of Mr. Ruiz's care and disposition of this lawsuit? How could DMA assert an alleged right against Mr. Ruiz for compensation? If a potential recovery is insufficient to cover those alleged costs owed to DMA, does DMA intend to seek recourse directly against Mr. Ruiz for the remainder of same? If so, through what agreement may it seek said recourse?

The seventh and final area of inquiry seeks testimony concerns DMA's entire file relating to Mr. Ruiz. DMA provides no basis or good cause to show that it is a burden for DMA to testify concerning its own information relating to Mr. Ruiz. DMA attempts to state that it would be required to hire counsel to attend a deposition, but no deposition ever requires a party to engage counsel; such engagements are based on the sole prerogative of the deponent and cannot be imputed to the noticing party.

III. **CONCLUSION:**

DMA has failed to meet its burden to show this Court that it possesses good cause to prevent Turn Services' discovery of relevant information. The testimony sought was specifically amended per this Court's order following DMA's limited production of documents. The documents produced demand testimony; specifically, testimony is needed to determine the nature and extent of DMA's interest in this lawsuit and the costs it alleges are owed by Mr. Ruiz's for his cure. From the documents produced, it appears

that Mr. Ruiz is not personally liable for costs allegedly paid by DMA. Therefore, Turn Services cannot be held liable for those costs asserted by DMA. However, testimony is needed to confirm same.

For the foregoing reasons, Defendant, Turn Services, LLC, respectfully requests that this Honorable Court deny DMA's Motion to Quash and order DMA to pay all reasonable attorney's fees and costs associated with the drafting, preparing, and argument of this Motion and that DMA be compelled to designated a corporate representative(s) to appear for the noticed deposition.

Respectfully submitted:

/s/ *R. Chauvin Kean*
Michael A. McGlone, (#9318)
R. Chauvin Kean, (#36526)
**KEAN MILLER LLP**
First Bank and Trust Tower
909 Poydras St., Suite 3600
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051
mike.mcglone@keanmiller.com
chauvin.kean@keanmiller.com

***Attorneys for Turn Services, LLC***

## **CERTIFICATE OF SERVICE**

I hereby certify a copy of the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system this 29th day of December 2019. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system and/or U.S. Mail.

                                              */s/ R. Chauvin Kean*

20548097_1