# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TREVOR RUIZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-1400** |
| **TURN SERVICES, LLC** | **SECTION "L" (4)** |

## ORDER & REASONS

Before the Court is Defendant Turn Services, LLC's ("Turn Services") Motion to Review and Appeal Magistrate Judge's Order. R. Doc. 92. Diagnostic Management Affiliates – Preferred Provider Organizations, LLC ("DMA PPO"), the non-party subject of this dispute, opposes the motion. R. Doc. 95. Turn Services filed a reply. R. Doc. 100. The Court now rules as follows.

### I. FACTUAL BACKGROUND

Plaintiff Trevor Ruiz alleges that he was injured on or about December 6, 2018 when he was working on the M/V AFFIRMED ("the Vessel") as a member of Turn Services' crew. R. Doc. 1 at 2. Plaintiff claims that a line broke from the tow of the vessels and barges being transported by the Vessel and he was struck on the back, neck, shoulder, and arm. R. Doc. 1 at 2. Plaintiff states that he left the Vessel the next morning to seek medical treatment and has not returned to work since. R. Doc. 59-2 at 1. Plaintiff asserts that he was working in the capacity of a seaman within the meaning of the Jones Act and argues that his injuries were caused by the unsafe and unseaworthy conditions of the Vessel and due to the negligence of Turn Services and its employees. R. Doc. 1 at 3. Plaintiff is thus seeking damages for the following: past and future pain and suffering; mental anguish and emotional distress; loss of enjoyment of life; past and future lost wages and impairment of earning capacity; past and future maintenance, cure, and found; past and future medical bills; and punitive damages. R. Doc. 1 at 3–4.

## II. DMA PPO

DMA PPO is a finance company that contracts with attorneys in personal injury cases to pay for clients' medical expenses. R. Docs. 92-1 at 2, 95 at 2–3. According to its website, DMA PPO is "specifically designed to help attorneys build stronger, more profitable cases." R. Doc. 92-1 at 6 (citing R. Doc. 79-5). DMA PPO facilitates the provision of healthcare services through its network of "healthcare providers, hospitals, and facilities," which offer discounted rates. R. Docs. 92-1 at 2, 95 at 2. DMA PPO then "timely pays the providers for their medical services" without recovering payment from the client for a defined period of time. R. Doc. 95 at 3. At the end of litigation, DMA PPO seeks recovery of the medical expenses directly from the settlement or judgment; in the absence of either, DMA PPO collects directly from the client. R. Docs. 79-5, 92-1 at 2, 95 at 2–3. In this case, Plaintiff's counsel entered into an arrangement with DMA PPO "to pay certain medical expenses related to Mr. Ruiz's claim for cure." R. Doc. 92-1 at 2. In turn, Plaintiff has authorized DMA PPO to recover from a favorable judgment in this matter. R. Doc. 92-1 at 2.

## III. PROCEDURAL HISTORY

This motion represents repeated attempts by Turn Services to depose DMA PPO in its corporate capacity. In May 2019, Turn Services issued a deposition subpoena and Notice of Rule to DMA PPO. R. Doc. 26-10. DMA PPO filed a motion to quash and for protective order, R. Doc. 26, to which Turn Services responded by filing a motion to compel the deposition, R. Doc. 29. The dispute was brought before Magistrate Judge North in July 2019, after which the Court ordered the parties to "confer on the need for a deposition of DMA PPO in light of the document production" then ongoing. R. Doc. 40 at 2. The parties' renewed negotiations failed. Turn Services

issued another subpoena, which prompted DMA PPO to file a second motion to quash and for protective order. R. Doc. 75.

The parties reappeared before Judge North on January 8, 2020 to argue the issue. R. Doc. 95-1. Turn Services argued that deposition testimony would reveal key information absent from documents already produced; specifically, Turn Services argued that it would reveal DMA PPO's enforcement methods and the reasonableness of medical costs. R. Doc. 95-1. The Court disagreed. Judge North granted DMA PPO's motion to quash and for protective order. R. Doc. 87. Judge North explained on the record why the "corporate deposition of non-party DMA would be disproportionate to the needs of the case given the documentary production already made by DMA," R. Doc. 87:

> I'm not going to let you have a deposition of DMA to talk about what they've done with other plaintiffs and other individuals in the past. You got the discovery that you need. And for me to order that this nonparty sit for a deposition in this case under the circumstances and based on what you've already been given and what it is that you're telling me you still need is disproportionate to the needs of the case. So I'm not going to let you all take the deposition.

R. Doc. 95-1 at 11.

## IV. PRESENT MOTION

Turn Services has filed a Motion to Review and Appeal Magistrate Judge's Order with respect to the grant of DMA PPO's motion to quash and for protective order. R. Doc. 92. Turn Services argues that a corporate deposition is necessary to produce relevant information absent from the documents already produced. R. Doc. 92-1 at 11. According to Turn Services, "the documents produced by DMA do not declare at what rate or amount DMA may recover from the judgment . . . or if Mr. Ruiz is personally liable." R. Doc. 92-1 at 7. Moreover, Turn Services

3

"seeks to uncover the standard (if such exists) average rate DMA contracts to pay and/or reimburse its healthcare providers" for certain procedures. R. Doc. 92-1 at 8.

DMA PPO counters that Judge North's decision must be sustained. First, DMA PPO argues that the documents it provided already demonstrate the extent of Plaintiff's liability to DMA PPO. R. Doc. 95 at 11. Second, DMA PPO argues that Turn Services has waived its claim to discovery of reasonable rates for specific procedures because the issue "was not raised in the first instance before Judge North either in writing or during oral argument." R. Doc. 95 at 2. Finally, DMA PPO argues that none of Turn Services' arguments "satisfies Turn Services' burden of proof for overturning a non-dispositive decision of a magistrate judge." R. Doc. 95 at 2.

## V. LEGAL STANDARD

### A. Discovery Requests

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. Proc. 26(b)(1). Where information sought is within the scope of discovery, it "need not be admissible in evidence to be discoverable." *Id.* "The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials." *Riverkeeper v. Taylor Energy Co., LLC*, 309 F.R.D. 381, 384 (E.D. La. 2015) (citing *Herbert v. Lando*, 441 U.S. 153, 176 (1979)).

### B. Review of a Magistrate Judge's Decision

A magistrate judge's ruling on a non-dispositive matter is subject to reversal where the decision is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). The moving party bears a heavy burden. "A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 n.11 (5th Cir. 2014) (quoting *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006)). Stated another way, "[a]n order is

4

clearly erroneous if the court 'is left with the definite and firm conviction that a mistake has been committed.'" *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 768 (5th Cir. 2015) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "The district court may not undertake a de novo review of the magistrate's disposition." *Cordova v. Crowley Marine Servs., Inc.*, No. CIV.A. 02-2880, 2003 WL 21804986, at *1 (E.D. La. Aug. 4, 2003) (citing *Merritt v. Int'l Brotherhood of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. Unit A 1981)).

## VI. DISCUSSION

As a threshold matter, the Court is not persuaded by DMA PPO's argument that Turn Services waived its right to argue for discovery on the reasonableness of certain medical costs. R. Doc. 95 at 1–2. At multiple points during oral argument before Judge North, counsel for Turn Services raised the issue. *See, e.g.*, R. Doc. 95-1 at 7 ("I think it's very simple that we're entitled to investigate the reasonableness of the costs."); R. Doc. 95-1 at 8 ("We're entitled to investigate the reasonableness of those cure -- cost demanded[.]"). Judge North also engaged with defense counsel on the subject. R. Doc. 95-1 at 9 (the Court noting to defense counsel that "you've got what you need to investigate the reasonableness of the charges"). DMA PPO seems to imply that the argument is waived because Turn Services never raised this issue with respect to *specific* medical procedures. R. Doc. 95 at 2 ("Turn Services argues now, for the first time, that the deposition of DMA PPO is necessary in order for it to determine what the reasonable and customary rates are for L4-5, L5-S1 ESIs[.]"). The statements made with respect to cost reasonableness, however, seem broad enough to encompass these and other procedures. Therefore, the Court does not find the argument waived.

Nor does the Court agree with DMA PPO's harsh characterization of Turn Services' motion practice. DMA PPO's opposition memorandum includes the following: "Harassment. No

5

word better describes Turn Services' conduct towards DMA PPO[.]" R. Doc. 95 at 1. However, the record reveals that Turn Services has filed two subpoenas in pursuit of DMA PPO's corporate deposition. R. Docs. 26-6, 75-4. Earnest attempts to obtain discovery can hardly be considered "harassment." Furthermore, the Court is not moved by DMA PPO's rhetorical attempt to victimize itself. DMA PPO presents itself as "a third-party that has been unwillingly thrust into this litigation." R. Doc. 95 at 1. Surely DMA PPO's involvement in this action comes as no surprise when the company is designed to work alongside attorneys in litigation. DMA PPO's website itself states: "DMA is not just a finance company! We are a service specifically designed to help attorneys build stronger, more profitable cases." R. Doc. 79-5. In fact, it appears that DMA PPO has litigated similar discovery disputes in the past. *See, e.g.*, *Howard v. Offshore Liftboats, LLC*, No. CIV.A. 13-4811, 2015 WL 5944310, at *4 n.67 (E.D. La. Oct. 13, 2015); *McCloskey v. Higman Barge Lines, Inc.*, 2018-1008 (La. App. 4 Cir. 4/10/19), 269 So. 3d 1173, 1177. Therefore, while DMA PPO may indeed be a third-party, its involvement here can hardly be unexpected.

  Nevertheless, this Court will not alter the Magistrate Judge's findings. Turn Services faces a high burden that is not surmounted here. Judge North explained at length why the deposition request is "disproportionate to the needs of the case." R. Doc. 95-1 at 11. With respect to reasonableness of medical costs, Judge North noted his previous order for production of "what the billed charges are and what DMA paid the doctors for the billed charges." R. Doc. 95-1 at 8–9. As such, Turn Services has "what [it] need[s] to investigate the reasonableness of charges." R. Doc. 95-1 at 9. Likewise, Judge North explained at length why a deposition would not adequately address Turn Services' questions about recovery and liability. Whereas defense counsel argued he is "simply trying to determine what DMA's practice is specifically related to Mr. Ruiz," Judge North correctly countered that DMA PPO does not yet "know what their practice is" with respect

to Plaintiff because "[i]t hasn't happened yet." R. Doc. 95-1 at 11. Without finality in Plaintiff's case, DMA PPO would be forced to speculate a response based on hypothetical outcomes or the handling of different cases in the past. R. Doc. 95-1 at 9–11. For those reasons, Judge North found Defendant's deposition request "disproportionate to the needs of this case." R. Doc. 95-1 at 11.

Having examined Judge North's reasoning, this Court is not "left with the definite and firm conviction that a mistake has been committed." *Alphonse.*, 618 F. App'x at 768 (quoting *Anderson*, 470 U.S. at 573). Nor can it be said that the outcome is at all "implausible." *Moore*, 755 F.3d at 808 n.11 (quoting *St. Aubin*, 470 F.3d at 1101). "A magistrate judge is afforded broad discretion in resolving non-dispositive pre-trial matters." *Cook v. Flight Servs. & Sys., Inc.*, No. CV 16-15759, 2019 WL 2067640, at *1 (E.D. La. May 10, 2019). It cannot be said that Judge North's discretion here was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Accordingly, Turn Services' appeal is denied.

VII.    **CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that Turn Services' Motion to Review and Appeal Magistrate Judge's Order is **DENIED**. Magistrate Judge North's grant of DMA PPO's Second Motion to Quash Subpoena and Limit Areas of Inquiry is **AFFIRMED**.

New Orleans, Louisiana, this 9th day of March, 2020.

_____
ELDON E. FALLON
UNITED STATES DISTRICT JUDGE